IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          CASE NO. 14-08824 (ESL)

ROBERTO CENTENO PAGAN                           CHAPTER 7

    Debtor

OPINION AND ORDER

        This case is before the court upon the *Debtor's Motion for Rule 9011 Sanctions* (Docket No. 67). The Debtor seeks sanctions against unsecured creditor Amada Medina Ramos and her legal counsel for the filing of *Medina Ramos' Supplemented §707(a) &/or §707(b)(3)(A) & §349 Motion to Dismiss* (Docket No. 40). The Debtor alleges that the *Motion to Dismiss* was frivolous, malicious, and caused the Debtor to incur in unwarranted expenses and delay in the closing of his bankruptcy case. Consequently, Debtor prays for sanctions in the form of attorney's fees and costs. Also before the court is the *Opposition to Debtor's Motion for Rule 9011 Sanctions* filed by Medina Ramos' legal counsel (Docket No. 69), the *Order to Show Cause* (Docket No. 75) entered by this court on June 16, 2016, and attorney Morales Vidal's responses thereto (Docket Nos. 77, 81, 82 and 83). For the reasons stated herein, *Debtor's Motion for Rule 9011 Sanctions* (Docket No. 67) is denied. However, the court hereby sanctions attorney Morales Vidal under 28 U.S.C. §1927.

Procedural Background

        The Debtor filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code on October 28, 2014 (Docket No. 1). On October 29, 2014, the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadline (the "*Notice*") was docketed in the instant case (Docket No. 6). The *Notice* disclosed that the deadline to object to the Debtor's discharge or to challenge the dischargeability of certain debt was January 25, 2015. On January 11, 2015, Amada Medina Ramos (hereinafter referred to as "Medina Ramos") filed a motion requesting an extension of ninety (90) days to file a motion to dismiss for bad faith under Section 707 and/or a complaint

-1-

to deny Debtor's discharge or to challenge the dischargeability of Debtor's debt to Medina Ramos pursuant to Section 523 (Docket No. 17), and the same was granted On January 15, 2015, (Docket No. 18). On January 15, 2015, the Debtor filed his *Response to Amada Medina Ramos' Motion for Extension of Time* in which he argued, among other things, that the request for extension of time was frivolous and that the ninety (90) day request was unreasonable (Docket No.19).

On February 11, 2015, Medina Ramos filed motion titled *Amada Medina Ramos Verified Request to Initiate Discovery Before Motion to Dismiss Under §707(a) &/or §707(b) &/or §523/§727 Complaint is Filed* (the "*Motion to Initiate Discovery*", Docket No. 21) requesting that the court enter an order authorizing discovery alleging that there was a need for discovery to ascertain the viability of her potential actions against the Debtor. On that same date, Medina Ramos filed a supplement to the motion requesting discovery, adding Medina Ramos' declaration that the information contained therein was correct (the "*Supplement to Motion to Initiate Discovery*", Docket No. 22). On February 12, 2015, the Debtor filed his *Response to Motion to Initiate Discovery* (Docket No. 23) in which he argued, among other things, that the request for discovery was unnecessary since based on Medina Ramos' allegations she must have possession or control of any documents or evidence that would substantiate her potential claims against the Debtor. In addition, the Debtor alleged that Medina Ramos has no evidence of bad faith or abuse and that she has access to the public documents related to the pre-petition probate and state court litigation related to Medina Ramos' claim against the Debtor. On February 13, 2015, the Debtor filed a *Supplement in Opposition to Motion to Initiate Discovery* (Docket No. 24) in which he informed the Court that on that same date his legal counsel forwarded to Medina Ramos' legal counsel all documents in Debtor's possession related to Medina Ramos' claim. In addition, the Debtor reiterated his opposition to discovery. On February 18, 2015, the court entered an Order denying Medina Ramos' *Motion to Initiate Discovery* (Docket No. 25). On that same date, the court also entered an order denying Medina Ramos' *Supplement to Motion to Initiate Discovery* (Docket No. 26).

Thereafter, on April 22, 2015, Medina Ramos filed *Medina Ramos' §707(a) &/or §707(b)(3)(A) & §349 Motion to Dismiss* (Docket No. 35), which was denied without prejudice for failure to comply with LBR 9013-1(3) and LBR 9013-1(c) (Docket No. 36). Subsequently, on May 1, 2015, Medina Ramos filed *Movant Request for Reconsideration of Order Denying Motion to Dismiss re docs #35 & #36 & Request Leave To Supplement & Notice Creditors Not Otherwise Noticed* (Docket No. 38) in which she sought leave to supplement Docket No. 35 in order to comply with the notice requirements of LBR 9013-1(c)[1]. On that same date, Medina Ramos proceeded to file *Medina Ramos' Supplemented §707(a) &/or §707(b)(3)(A) & §349 Motion to Dismiss*[2] (the "*Motion to Dismiss*", Docket No. 40) in which she argued that the Debtor's bankruptcy case should be dismissed because it was filed in bad faith and with the intent to avoid payment of Debtor's $25,000.00 debt with Medina Ramos "through conduct akin to fraud, misconduct, or gross negligence" (Docket No. 40, p.7). Medina Ramos alleged that the Debtor: (i) "had no reason or cause to file for "protection" from his creditors, other than to thwart and gain undue advantage and avoid payment to Movant" (Docket No. p. 5); (ii) "continually manipulated Movant to obtain the conveyance of her property rights in the Barceloneta property and later free himself from this single debt by repeatedly promising payment in exchange for conveyance"; and (iii) "has no real need to shield himself from collection or pressure from his other creditors since debtor's only source of income in that of Social Security benefits is protected under 42 U.S.C. §407 from collection or garnishment. His only asset, titled to him by misleading and manipulating Movant to sign a donation, is now exempted from the reach of creditors under the Puerto Rico Homestead Law 195" (Docket No. 40, p.6). Accordingly, Medina Ramos contends the "debtor's utilization of the protections of Bankruptcy Code and law, as well as his utilization of the Puerto Rico exemption law has been

---

[1] Medina Ramos also asserted that the *First Motion to Dismiss* complied with 9013-1(3) since the Debtor had previously certified that he is not active in the military service at Docket No.2. In the alternative, Medina Ramos requested leave to file the corresponding certification (Docket No. 38, ¶4).

[2] On that same date, Medina Ramos filed an incomplete version of the motion to dismiss (Docket No. 39). Medina Ramos later clarified that the Debtor should respond to the *Motion to Dismiss* filed at Docket No. 40. See Docket Nos. 43, 44.

in conscious detriment of the Movant and establishes "cause" to dismiss with case with prejudice for bad faith and abuse of process" (Docket No. 40, p. 10). In addition, Medina Ramos argued that a majority of courts have held that dismissal under Section 707(a) for bad faith is appropriate even though there is no controlling precedent from the First Circuit Court of Appeals. Moreover, she alleged that seven of the twelve factors considered by the court in In re Lombardo, 370 B.R. 506, 512 (Bankr. E.D.N.Y. 2007) to determine there was cause to dismiss pursuant to Section 707(a) are present in this case. Medina Ramos also sustained that the case could be dismissed under Sections 707(b)(1) and 707(b)(3)(A).

On May 8, 2015, the Debtor filed a *Notice of Intent to Pursue Rule 9011 Sanctions* (Docket No. 42) informing the court that on that same date a copy of a motion requesting sanctions was sent to Medina Ramos and her legal counsel in compliance with Fed. R. Bank. P. 9011(c). On May 26, 2015, Medina Ramos filed *Movant* [*sic*] *Response to Debtor's Motion of Intent to Pursue Rule 9011 Sanction* (Docket No. 45) in which she declared that "[t]he motion to dismiss which debtor purports violates Rule 9011 was drafted and filed after carefully reviewing the facts [without the opportunity of discovery prior to its filing as requested at doc #22 and opposed by debtor and denied by the court] and researching the law" (Docket No. 45, pp.1-2, ¶5). In addition, Medina Ramos, through her legal counsel, reaffirmed her request that the Debtor's bankruptcy case be dismissed for bad faith and declared that "[a]lthough Movant's health is very delicate at this time and has turned for the worse very recently, it is in the opinion and evaluation by the undersigned, that there is no reason to withdraw the motion to dismiss at this time" (Docket No. 45, p.3, ¶12).

Subsequently, on June 1, 2015, the Debtor filed a *Motion for Order* (Docket No. 46) in which he requested that the court enter an order setting a hearing to consider *the Motion to Dismiss* or ordering the Debtor to file a response within thirty (30) days from the entry of the order. On June 12, 2015, the Court entered an Order and Notice scheduling a preliminary pretrial and scheduling conference under Fed. R. Bank. P. 7016(b) on October 16, 2015 (Docket No. 49).

On October 5, 2015, the Debtor and Medina Ramos filed a *Joint Motion to Convert Pre-Trial Hearing to Status Conference* (Docket No. 51). In addition, the parties informed the court that they were engaged in communications regarding the exchange of documents and papers necessary to litigate the contested matter as well as a possible settlement. On October 14, 2015, the court entered an Order granting the *Joint Motion to Convert Pre-Trial Hearing to Status Conference* (Docket No. 52).

On October 16, 2015, the court held a Status Conference in which Medina Ramos's legal counsel, Lyssette Morales Vidal, for the first time informed the court and Debtor's counsel that Medina Ramos had passed away a month before the hearing. See Docket Nos. 54 (*Audio File*) and 55 (*Minute Entry*). In addition, attorney Morales Vidal informed the court that she would be filing a motion to substitute pursuant to Fed. R. Civ. P. 25[3]. Debtor's counsel declared that this was the first time he was being notified of the Movant's death despite several attempts to communicate with attorney Morales Vidal with regards to the Status Conference and a possible settlement prior to the hearing. The court noted in the *Minute Entry* that "[m]ovant has passed one month ago. Movant's counsel had failed to inform debtor's counsel[4]" (Docket No. 55). In addition, the court granted the Debtor sixty (60) days to file an answer to the *Motion to Dismiss*.

On November 20, 2015, the Debtor filed a *Response to the Motion to Dismiss* (Docket No. 57) and *Debtor's Memorandum in Opposition to Dismissal* (Docket No. 58) in which he argued, without conceding that Section 707(a) is a proper basis for dismissal, that: (i) the Debtor's bankruptcy filing was filed in good faith due to his financial situation; (ii) the Debtor did not induce Medina Ramos to sign any of the documents pertaining to the donation of the Barceloneta property; (iii) during the state court proceedings Medina Ramos was represented by an attorney; (iv) the Debtor had other debts when he filed for bankruptcy as evidenced by *Schedule F*; and (v) the Debtor had a legal right to file for homestead protection. In addition, the

---

[3] The court notes that the motion to substitute pursuant to Fed. R. Civ. P. was never filed.
[4] The court also questioned whether Ms. Medina Ramos' daughter had standing to pursue the action.

-5-

Debtor stressed that despite Medina Ramos' death, "even without a client or a substitute, Amada's counsel continued to prosecute this action has if nothing had changed" (Docket No. 58, p.12). Accordingly, the Debtor declared that "[s]uch lack of candor toward the Court and consideration for her adversaries deserves scrutiny from the court and a relevant sanction against Movant's counsel to deter similar wasteful and spurious litigation in the future." Id.

On December 4, 2015, the court entered an *Order* directing attorney Morales Vidal to show cause why the *Motion to Dismiss* should not be denied for the reasons stated by the Debtor (Docket No. 59). After several procedural events[5], on January 4, 2016, attorney Morales Vidal filed a *Response to Order at doc#62 & Motion to Withdraw doc#40 with Prejudice due to Death of Movant* in which she requested that the *Motion to Dismiss* be withdrawn since she no longer had a client or witness because the Movant's heir was not interested in pursuing the contested matter (Docket No. 64). In addition, attorney Morales Vidal declared that "[a]lthough the totality of circumstances surrounding the pre-petition dealings with movant were in the Movant's opinion, in bad faith and in abuse of the bankruptcy process, it is a determination that is ultimately only made by the Court after weighing the credible testimony of the parties, testimony and evidence not possible under the circumstances of Movant's death" (Docket No. 64, p.3, ¶14).

Subsequently, on January 5, 2016, the Debtor filed a *Motion for Leave to File Motion for Rule 9011 Sanctions*[6] (Docket No. 65) and the same was granted on January 12, 2016 (Docket No. 66). On January 14, 2016, the Debtor filed *Debtor's Motion for Rule 9011*

---

[5] See Docket Nos. 61 and 62.

[6] The Debtor argued that:
> "The Movant passed away apparently well before the hearing scheduled for and held on October 16, 2015. (Dkt. 55)(the "Hearing"). Undeterred, counsel for Movant continued to press this matter as if nothing had happened. Prior to the Hearing and without disclosing Movant's death to Debtor's attorney, Movant's counsel brazenly attempted to entice Debtor's counsel into reaching a settlement whereby the Debtor would re-affirm this unsecured and dischargeable debt. Also, at the Hearing, Movant's counsel was asked to enter the statement of death and inform the Court how she could substitute the dead Movant's heir under Rule 25 in a matter where no claim was filed and did not involve a dischargeability contest. (Dkt. 54-55). Movant's counsel failed to do either. Instead, knowing all along that the allegations were unsupportable and false, she caused Debtor to have to answer the [*Motion to Dismiss*], only to "withdraw" it at this time after being unable to comply even with the most minimum requirements set forth by the Court. Dkt. 57-62)."
Docket No. 65, pp. 1-2.

-6-

*Sanctions*[7] seeking sanctions against attorney Morales Vidal pursuant to Fed. R. Bank. P. 9011 arguing that: (i) "the motion to dismiss frivolous and malicious"; (ii) "the multiple claims for relief in the motion are inappropriate for a motion to dismiss and are not warranted or supported by existing law or a good faith argument to modify or extend existing law; and (iii) "the claims, false statements and allegations in the motion are clearly meant to aggravate and harass the debtor and cause in to incur in unwarranted expenses and delay in finishing his case and obtaining a discharge" (Docket No. 67, p. 5, ¶8). In addition, the Debtor requested that the court take notice what he alleges constitutes sanctionable conduct by attorney Morales Vidal, including: (i) "opposing counsel's conduct leading up to the October 16, 2015 hearing"; (ii) "the ambiguous manner in which she has handled the death of her client and her antics in notifying the fact"; (iii) "her unsupportable statements, legal arguments and allegation made for the record during that hearing concerning the viability of the action, the availability of material witnesses and the certain inclusion of Amada's sole heir"; (iv) "her failure to address the Court's inquiry regarding [the] Rule 25 addition of Amada's heir and her failure to file a formal statement of death in the record"; (v) "her continuation of this matter despite not having a client"; (vi) "her attempt to entice Debtor and his counsel into reaffirming a dischargeable debt all the while knowing-and not disclosing-that her client was dead"; and (vii) "the unjustifiable manner in which she caused the additional waste and expense of time and resources by the Debtor, his attorneys and the judicial system by causing the continuation of this matter through her silence and gimmicks thus causing a formal, extensive and expensive response to the [*Motion to Dismiss*], only to withdraw it at the eleventh hour, and only after by confronted by an order of Court for her to finally to support her cause, or else" (Docket No. 67, pp.2-3). Accordingly, the Debtor requests sanctions in the form of attorney fees and costs in having to defend himself against the *Motion to Dismiss*.

---

[7] The Debtor declared that "[t]his Rule 9011 motion is in all material respects identical to the notice of motion served on the Movants dated May 8, 2015 and of which Movants acknowledge notice, a copy of which was attached to Debtor's motion for leave to seek Rule 9011 sanctions" (Docket No. 67, p.1).

On January 25, 2016, attorney Morales Vidal filed an *Opposition to Debtor's Motion for Rule 9011 Sanctions* (Docket No. 69) reiterating the arguments contained in Docket Nos. 45 and 64. In addition, attorney Morales Vidal argues that: (i) "there is an absence of even a prima facie case to warrant sanctions; (ii) the "Debtor has not shown, nor can he produce a showing of evidence of objectively unreasonable conduct on the part of the undersigned attorney, or a subjective determination of an improper purpose in the motion to dismiss"; and (iii) "[t]he purpose of the motion to dismiss was proper and warranted by law upon and evidentiary hearing or on summary judgment further on in the proceedings had it not been for the demise of the Movant." Moreover, attorney Morales Vidal also submits that she has been a responsible advocate during her more than forty (40) litigating before this court (Docket No. 69, p.4, ¶13).

On June 16, 2016, the court entered an *Order to Show Cause* ordering attorney Morales Vidal "to show cause within fourteen (14) days as to why she should not be sanctioned pursuant to 28 U.S.C. §1927" (Docket No. 75). The *Order to Show Cause* specifically makes reference to the "statements and allegations made by attorney Morales Vidal during the hearing held on October 16, 2015, (Docket No. 54 *Audio File*, Docket No. 55 *Minute Entry*)."

On July 5, 2016, attorney Morales Vidal filed a *Request for Extension of Time to Respond to Order to Show Cause at doc. #75* (Docket No. 77) requesting an additional thirty (30) days to file her answer to the *Order to Show Cause*. On that same date the Debtor filed a response informing the court that he had not objection to the request (Docket No. 78). On July 6, 2016, the court granted the *Request for Extension of Time to Respond to Order to Show Cause at doc. #75* (Docket No. 79).

On August 4, 2016, attorney Morales Vidal filed her *Attorney Response to Order at doc #75 to Show Cause* (Docket No. 81). In her response attorney Morales Vidal sustains that the *Motion to Dismiss* was not filed "unreasonably and vexatiously to multiply litigation" and that it was not filed "without a basis in law fact and law" (Docket No. 81, p. 1, ¶¶4-5). In addition, she declares that "[h]er pleadings and conduct in this and all of her cases has been responsible, reasonable and with the upmost integrity and good faith in the drafting of her pleadings on

behalf of her now deceased client…" (Docket No. 81, p. 2, ¶9). Attorney Morales Vidal also challenges the Debtor's allegations as to the *Motion to Dismiss* and reiterates that the evidence could have led this court to determine that the Debtor had filed the bankruptcy petition in bad faith had her client not passed away. Finally, she also argues that due process requires that the court "identify with specificity what litigation misconduct by the undersigned or her now deceased client, Movant in the *Motion to Dismiss*, or throughout these proceedings satisfy the triggering mechanism for §1927 that shows misconduct [vigorously denied by the undersigned] that has multiplied the proceedings both vexatiously and unreasonably" (Docket No. 81, p. 8, ¶45).

On August 5, 5016, attorney Morales Vidal filed a motion titled *Exhibits to Attorney Response to Order at doc #75 to Show Cause* (Docket No. 82) supplementing her response by attaching the documentary evidence which she sustains supported the allegations contained *Motion to Dismiss*. On August 7, 2016, attorney Morales Vidal filed a motion titled *Attorney's Motion to Inform Impossibility of Opening Audio at doc #54 & as Such Show Cause Filed at doc #81 Does Not Address Audio* (Docket No. 83) stating that she has not been able to open the *Audio File* at Docket No. 54 and prays for an extension to visit the Clerk's office for assistance. In the alternative, she submits her answer as is if the court does not grant her extension of time.

On September 1, 2016, the Debtor filed *Debtor's Position to Response to Show Cause, Dkt. 81-83* (Docket No. 84). He argues that the *Order to Show Cause* "is well-grounded and meritorious in light of counsel Morales Vidal's actions during and subsequent to the October hearing" (Docket No. 84, p. 2). However, the Debtor also informs the court that "so far as we are concerned, we want nothing from sister counsel, Lyssette Morales Vidal" and declares that "[b]y entry of the mere order to show cause, we deem ourselves satisfied and the dignity of our practice vindicated from the affront caused by sister counsel's litigation tactics." Id. The Debtor also sustains that although it no longer seeks an award of monetary sanctions against attorney Morales Vidal, that the court may impose other remedies such as a public reprimand, apology or bill of costs to the court. Finally, the Debtor requests that the matter be deemed submitted.

Jurisdiction

The court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b).  Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409. The power to sanction will be further discussed below.

Applicable Law and Analysis

*(A) Sanctions under Fed. R. Bank. P. 9011 and Fed. R. Civ. P. 11*

"Fed. R. Bankr. P. 9011 is derived from Fed. R. Civ. P. 11." In re Figueroa Alonso, 546 B.R. 1, 7 (Bankr. D.P.R. 2016). Moreover, as this court has previously explained:

> "The central purpose of Rule 11 is to deter baseless filings. *See CQ Int'l Co. v. Rochem Int'l, Inc., USA,* 659 F.3d 53, 62 (1st Cir.2011). Likewise, "the purpose of Federal Rule of Bankruptcy 9011 is to deter baseless filings in bankruptcy court and thus avoid unnecessary judicial effort, the goal being to make proceedings in the court more expeditious and less expensive. The rule imposes sanctions on persons violating the rule and, it is hoped, will act to deter future conduct of the same nature." Alan N. Resnick & Henry J. Sommer, 10 *Collier on Bankruptcy* ¶ 9011.01 (16th ed.2015)."

Id.  Specifically, Fed. R. Bank. P. 9011(b) provides:

> (b) Representations to the court
> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
> **(1)** it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> **(2)** the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> **(3)** the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> **(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bank. P. 9011.

The four subdivisions in Fed. R. Bank. P. 9011(b) "may be further divided in two categories; namely, the frivolousness clauses and the improper purpose clause." In re Terron Hernandez, 513 B.R. 172, 180 (Bankr. D.P.R. 2014). Fed. R. Bank. P. 9011(b)(1) "prohibits presentation of a document for an improper purpose" and "lists harassment, delay or needless increase in litigation as examples of improper purposes, but the list is not exhaustive." Alan N. Resnick & Henry J. Sommer, 10 Collier on Bankruptcy ¶ 9011.04[7][a] (16th ed. 2015)."Courts may infer the purpose of a filing from the consequences of a motion, such as delaying the proceedings or creating 'a persistent pattern of clearly abusive litigation." In re Terron Hernandez, 513 B.R. 172 at 180, quoting In re CK Liquidation Corp., 321 B.R. 355, 365 (B.A.P. 1st Cir. 2005) . "Fed. R. Bankr.P. 9011(b)(2)-(4), "require[ ] that a party's attorney must perform a reasonable preliminary investigation of the facts and the applicable law before filing a paper in federal court. Id., quoting In re Am. Telecom Corp., 319 B.R. 857, 867 (Bankr.N.D.Ill.2004).

In the instant case, the Debtor alleges that the allegations contained in the *Motion to Dismiss* were meant to aggravate the Debtor and to cause him to incur in unwarranted expenses and delay in closing his bankruptcy case and obtaining his discharge. In addition, the Debtor sustains that the factual allegations contained in the *Motion to Dismiss* are false. Finally, the Debtor argues that several of the prayers for relief included in the *Motion to Dismiss* have no basis in law. Therefore, the court must determine if the filing of the *Motion to Dismiss* violated Fed. R. Bank. P. 9011 (b)(1) and whether the allegations and arguments contained therein violated Fed. R. Bank. P. 9011 (b)(2) and (b)(3).

This court finds that sanctions pursuant to Fed. R. Bank. P. 9011(b) are not warranted. Firstly, the court finds that the *Motion to Dismiss* was not filed for an improper purpose. Although, the litigation that ensued from the filing of the *Motion to Dismiss* certainly prolonged

-11-

the Debtor's bankruptcy case, this court finds that it was not filed to harass the Debtor or to maliciously prevent or delay the entry of the Debtor's discharge. In addition, this court finds that although several of the remedies requested in the prayer for relief in the *Motion to Dismiss* were not proper, it is clear from the motion that the main relief requested was that the Debtor's bankruptcy case be dismissed pursuant to Section 707(a) and/or Section 707(b)(3)(A) as Medina Ramos alleged that it was filed in bad faith. Moreover, the *Motion to Dismiss* contained a thorough discussion of the legal theories and case law in support of the request for dismissal pursuant to Section 707(a) and/or Section 707(b)(3)(A). Finally, at this juncture the court cannot determine whether the factual allegations contained in the *Motion to Dismiss* had evidentiary support since Medina Ramos has passed away and is no longer able to testify in support of those allegations. Accordingly, this court denies the Debtor's request for sanctions pursuant to Fed. R. P. Bank. 9011(b).

 *(B) Sanctions under 28 U.S.C. §1927*

Section 28 U.S.C. §1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct. 28 U.S.C. § 1927.

"Sanctions under Section 1927 can only be imposed against attorneys, not parties." In re MJS Las Croabas Properties, Inc., 530 B.R. 25, 40 (Bankr. D.P.R. 2015), aff'd sub nom. MJS Las Croabas Properties, Inc., 545 B.R. 401 (B.A.P. 1st Cir. 2016). Moreover, although courts are split as to whether bankruptcy courts may impose sanctions under Section 1927, the Bankruptcy

Appellate Panel for the First Circuit has affirmed a bankruptcy court's award of sanctions under Section 1927. See MJS Las Croabas Properties, Inc., 545 B.R. at 418.

"The purpose of sanctions under § 1927 is to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy." Id. at 419, quoting In re Royal Manor Mgmt., Inc., 525 B.R. 338, 365 (BAP 6th Cir. 2015). Furthermore, the focus of Section 1927 is on a course of conduct. Id. ("Unlike Rule 11 sanctions which focus on particular papers, the inquiry under § 1927 is on a course of conduct."), quoting Bowler v. U.S. Immigration and Naturalization Serv., 901 F.Supp. 597, 605 (S.D.N.Y.1995)). The First Circuit Court of Appeals has explained that "[l]itigation conduct qualifies as "vexatious" if it is "harassing or annoying, regardless of whether it is intended to be so." Lamboy-Ortiz v. Ortiz-Velez, 630 F.3d 228, 245 (1st Cir. 2010) (citation omitted). Moreover, "section 1927 does not apply to "[g]arden-variety carelessness or even incompetence," but instead requires that the "attorney's actions ... evince a studied disregard of the need for an orderly judicial process, or add up to a reckless breach of the lawyer's obligations as an officer of the court." Id. at 245-46, citing Jensen v. Phillips Screw Co., 546 F.3d 59, 64 (1st Cir.2008).  Finally, in this Circuit a finding of subjective bad faith is not required and courts are to apply an objective standard in assessing an attorney's conduct. Cruz v. Savage, 896 F.2d 626, 632 (1st Cir. 1990) ("Finally, in assessing whether an attorney acted unreasonably and vexatiously in multiplying proceedings, the district courts in this circuit should apply an objective standard.").

In the instant case, the court finds that attorney Morales Vidal's actions add up to a reckless breach of her obligations as an officer of the court. Attorney Morales Vidal failed to inform this court or the Debtor's counsel of her client's passing prior to the hearing held on October 16, 2015, despite the fact that the *Minutes* reflect her client passed away a ***month before***

-13-

said hearing[8]. Also, attorney Morales continued settlement negotiations with the Debtor prior to the hearing despite the fact that the Movant had passed away. As a result, not only was the hearing held on October 16, 2015, but the Debtor had to file a reply and memorandum of law in opposition to the *Motion to Dismiss*, only for attorney Morales Vidal to end up eventually withdrawing the *Motion to Dismiss*. However, the motion withdrawing the *Motion to Dismiss* (Docket No. 64) was not filed until January 4, 2016 (almost five months after her client had allegedly passed away) and was filed in response to the *Order* entered by this court on December 4, 2015 (Docket No. 59). The unnecessary prolongation of this contested matter could have been avoided had attorney Morales Vidal promptly informed this court and Debtor's counsel of her client's passing, instead of continuing to litigate the matter without confirmation of whether Medina Ramos' daughter was interested or had standing to pursue the same. Accordingly, attorney Morales Vidal's cumulative behavior in continuing to litigate this matter despite the fact that her client had passed away, and the manner in which she prosecuted the same, including but not limited to failing to inform Debtor or the court of her client's death, is sanctionable under 28 U.S.C. §1927.

Conclusion

For the reasons stated herein, *Debtor's Motion for Rule 9011 Sanctions* (Docket No. 67) is denied. However, the court hereby sanctions attorney Morales Vidal pursuant to 28 U.S.C. §1927 to pay to the Debtor the excess costs, expenses, and attorneys' fees incurred after September 15, 2015. The Debtor is further ordered to file an itemized description of his fees, excess costs and expenses related to his counsel's work in defending against the *Motion to*

---

[8] The court notes that during the hearing attorney Morales Vidal stated that she did not know that her client had passed away a month ago, but that she had recently been informed. Nevertheless, it is clear she had knowledge of her client's passing prior to the hearing and failed to inform the court or Debtor's counsel. See *Audio File* (Docket No 54) at 10:19-10:20 AM.

-14-

*Dismiss* within fourteen (14) days. Attorney Morales Vidal may file a response fourteen (14) days thereafter.

SO ORDERED.

In San Juan, Puerto Rico, this 30th day of January, 2017.